**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
*spencer@spencersheehan.com*

        *-and-*

**REESE LLP**
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, NY 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
*mreese@reesellp.com*

United States District Court
Southern District of New York                    1:19-cv-08975

| |
|---|
| Eric Parham, individually and on behalf of all others similarly situated |
| Plaintiff |
| - against - |
| Aldi Inc. |
| Defendant |

                                        Class Action Complaint

Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.      Aldi Inc. ("defendant") manufactures, distributes, markets, labels and sells almondmilk beverages purporting to be characterized by vanilla under the Friendly Farms brand ("Products").

2.      The Products are available to consumers nationwide from one or more of the following: defendant's Aldi grocery stores, third-party retailers, including brick and mortar and

1

online stores and directly from defendant's website.

3.      The Products are sold in sizes including 64 FL OZ (1.5 L or ½ gallon) in regular and unsweetened varieties.

4.      The Products' front labels and/or advertising makes direct representations with respect to their primary recognizable and characterizing flavor, by the word "VANILLA" and/or vignette.[1]

Vanilla        Unsweetened Vanilla



**I.   Vanilla is Constantly Subject to Efforts at Imitation Due to High Demand**

5.      By law, vanilla refers to the "the total sapid and odorous principles extractable from one-unit weight of vanilla beans."[2]

6.      Shortly after the passage of the Pure Food and Drugs Act of 1906, E. M. Chace,

---

[1] 21 C.F.R. § 101.22(i).
[2] 21 C.F.R. §169.3(c)

Assistant Chief of the Foods Division of the U.S. Department of Agriculture's Bureau of Chemistry, noted "There is at least three times as much vanilla consumed [in the United States] as all other flavors together."[3]

7.    This demand could not be met by the natural sources of vanilla, leading manufacturers to devise methods to imitate vanilla's flavor and appearance.

8.    Though the Pure Food and Drugs Act was enacted to "protect consumer health and prevent commercial fraud," these public ills have hardly ceased, except for the artifices employed.[4]

9.    Daily headlines alert us to this resurgent international threat of "food fraud" – from olive oil made from cottonseeds to the horsemeat scandal in the European Union.[5]

10.    While "food fraud" has no agreed-upon definition, its typologies encompass an ever-expanding, often overlapping range of techniques with one common goal: giving consumers less than what they bargained for.

11.    Vanilla is considered a "high-risk [for food fraud] product because of the multiple market impact factors such as natural disasters in the source regions, unstable production, wide variability of quality and value of vanilla flavorings," second only to saffron in price.[6]

12.    The efforts at imitating vanilla offers a lens to the types of food fraud regularly employed across the spectrum of valuable commodities.[7]

---

[3] E. M. Chace, "The Manufacture of Flavoring Extracts," Yearbook of the United States Department of Agriculture 1908 (Washington, DC: Government Printing Office, 1909) pp.333–42, 333 quoted in Nadia Berenstein, "Making a global sensation: Vanilla flavor, synthetic chemistry, and the meanings of purity," History of Science 54.4 (2016): 399-424 at 399.
[4] Berenstein, 412.
[5] Jenny Eagle, 'Today's complex, fragmented, global food supply chains have led to an increase in food fraud', FoodNavigator.com, Feb. 20, 2019; M. Dourado et al., Do we really know what's in our plate?. Annals of Medicine, 51(sup1), 179-179 (May 2019); Aline Wisniewski et al., "How to tackle food fraud in official food control authorities in Germany." Journal of Consumer Protection and Food Safety: 1-10. June 11, 2019.
[6] Société Générale de Surveillance SA, ("SGS "), Authenticity Testing of Vanilla Flavors – Alignment Between Source Material, Claims and Regulation, May 2019.
[7] Kathleen Wybourn, DNV GL, Understanding Food Fraud and Mitigation Strategies, PowerPoint Presentation, Mar. 16, 2016.

| Type of Food Fraud | Application to Vanilla |
|---|---|
| ➢ Cheating on analytical tests by containing markers specifically tested for | • Manipulation of the carbon isotope ratios to produce synthetic vanillin with similar carbon isotope composition to natural vanilla |
| ➢ Cheating by giving consumers the impression the food or ingredient is present in greater amounts and/or higher quality form than it actually contains | • Ground vanilla beans and/or seeds to provide visual appeal as "specks" so consumer thinks they are a result of the product containing real vanilla bean, when the ground beans have been exhausted of flavor, and any vanilla flavor tasted may not even be due to the presence of real vanilla |
| ➢ Substitution or Replacement a food product/ingredient with an alternate food product/ingredient of lower quality | • Tonka beans, which are banned from entry to the United States, instead of vanilla beans<br>• Coumarin, phytochemical found in Tonka beans, to increase the vanilla flavor perception |
| ➢ Coloring agents to produce a more attractive color | • Caramel in vanilla extracts to darken the substance's color additives like caramel to enhance the hue of an imitation vanilla so it more closely resembles real vanilla[8]<br>• Annatto and turmeric in dairy products purporting to be flavored with vanilla, to darken the color to better resemble the hue of rich, yellow butter |
| ➢ Addition of less expensive substitute ingredient to mimic flavor of more valuable component | • Synthetically produced ethyl vanillin, derived from wood pulp, tree bark or coal tar |

---

[8] Renée Johnson, "Food fraud and economically motivated adulteration of food and food ingredients." Congressional Research Service R43358, January 10, 2014.

| | |
|---|---|
| ➢ Ingredient list deception[9] | • Subtle, yet deliberate misidentification and obfuscation of a product's components and qualities as they appear on the ingredient list – "ground vanilla beans" as containing actual vanilla flavor when they are devoid of any naturally occurring vanilla flavor |
| | • "Vanilla With Other Natural Flavor" sold by flavor suppliers to manufacturers, which contains vanillin as part of the "WONF," in violation of vanilla-vanillin regulations; manufacturers then deceive consumers by labeling ingredient "natural flavor" |
| ➢ Diluting/Extending | • Combination with flavoring substances such as propenyl guaethol ("Vanitrope"), a "flavoring agent [, also] unconnected to vanilla beans or vanillin, but unmistakably producing the sensation of vanilla"[10] |
| | • "Spiking" or "fortification" of vanilla through addition of natural flavors including vanillin, which simulates vanilla taste but obtained from tree bark |
| | • Compounding vanilla flavor with other flavors |

## II.  The Unqualified Representations as "Vanilla" are Misleading

13.    The front labels represent the Products' characterizing flavor is vanilla and that they contain a characterizing food ingredient, vanilla flavoring or vanilla extract, that is sufficient to independently characterize the Products.

14.    The unqualified, prominent and conspicuous representations as "Vanilla" is false,

---

[9] Recent example of this would be "evaporated cane juice" as a more healthful sounding term to consumers to identify sugar
[10] Berenstein, 423.

deceptive and misleading because they contain flavors other than vanilla, as revealed by "Natural Flavors" on the ingredient list.[11]

Ingredient List (Unsweetened)

INGREDIENTS: ALMONDMILK (FILTERED WATER, ALMONDS), CALCIUM CARBONATE, NATURAL FLAVORS, SEA SALT, GELLAN GUM, DIPOTASSIUM PHOSPHATE, SUNFLOWER LECITHIN, XANTHAN GUM, VITAMIN A PALMITATE, VITAMIN D2, D-ALPHA-TOCOPHEROL (VITAMIN E).

**INGREDIENTS:** ALMONDMILK (FILTERED WATER, ALMONDS), CALCIUM CARBONATE, NATURAL FLAVORS, SEA SALT, GELLAN GUM, DIPOTASSIUM PHOSPHATE, SUNFLOWER LECITHIN, XANTHAN GUM, VITAMIN A PALMITATE, VITAMIN D2, D-ALPHA-TOCOPHEROL (VITAMIN E).

15.    If the "natural flavors" on the ingredient list only consisted of vanilla flavoring or vanilla extract, these higher value ingredients would be declared by their common or usual names instead of the opaque and ubiquitous "natural flavor."

16.    "Natural flavor" refers to "the essential oil, oleoresin, essence or extractive…which contains the flavoring constituents" from a natural source such as plant material and can refer to combinations of natural flavors.[12]

17.    Reasons for combining flavors prior to their addition to the food include the volatile nature of flavoring constituents, the ability to make misleading representations with respect to a product's flavor, ease of us and consistency.

A.  Vanilla with Other Natural Flavors by Itself Would be Misleading

---

[11] The unsweetened vanilla product contains the same ingredients except for cane sugar.
[12] 21 C.F.R. § 101.22(a)(3).

18.   Where a flavor is derived from natural sources other than the characterizing flavor (i.e., vanilla) that simulates, resembles or reinforces a product's characterizing flavor which is derived from the presence of the food ingredient – i.e., vanilla flavoring or vanilla extract – such flavors are known as "other natural flavors" or "WONF flavors."[13]

19.   A product which contains "other natural flavors" is required to be designated on the front label by "[CHARACTERIZING FLAVOR] + [FLAVORED] + WONF."[14]

20.   The ingredient most commonly used in the trade to describe a combination of flavors from real vanilla and non-vanilla natural sources such as tree bark or lignin, which simulate and resemble vanilla is "Vanilla With Other Natural Flavors" or "Vanilla WONF."[15]

21.   "Vanilla With Other Natural Flavors" is often declared as "Natural Vanilla Flavor with Other Natural Flavor," "Natural Vanilla Flavor, [followed separately by] Natural Flavor" or "Natural Flavor(s)".

22.   If the Products contain an insufficient amount of vanilla to independently characterize the Products and the "other natural flavors" do not simulate or resemble vanilla, a non-misleading description would be "Natural Vanilla Flavored Almondmilk" or "Vanilla Flavored Almondmilk."[16]

23.   If the Products' natural flavor ingredient refers to a "Vanilla WONF" its flavor *could* be described as "Vanilla Flavored Almondmilk With Other Natural Flavor."

---

[13] 21 C.F.R. § 101.22(i)(1)(iii).
[14] 21 C.F.R. § 101.22(i)(1)(iii).
[15] 21 C.F.R. § 101.22(i)(1)(iii) ("If the food contains both a characterizing flavor from the product whose flavor is simulated and other natural flavor which simulates, resembles or reinforces the characterizing flavor, the food shall be labeled in accordance with the introductory text and paragraph (i)(1)(i) of this section and the name of the food shall be immediately followed by the words "with other natural flavor" in letters not less than one-half the height of the letters used in the name of the characterizing flavor.")
[16] 21 C.F.R. § 101.22(i)(1)(i) ("If the food is one that is commonly expected to contain a characterizing food ingredient, e.g., strawberries in "strawberry shortcake", and the food contains natural flavor derived from such ingredient and an amount of characterizing ingredient insufficient to independently characterize the food").

24.     However, such a description would cause consumers to expect the Products contain the standardized vanilla ingredients – vanilla flavoring or vanilla extract – and *a greater amount* of these high value products, when they actually contain a compounded vanilla flavor.

25.     Since the amounts of vanilla flavoring or vanilla extract and natural flavors have a material bearing on the price and consumer acceptance of the Products, their identity statement should be accompanied by the percentages of vanilla and non-vanilla flavors, i.e., 50% vanilla flavor and 50% non-vanilla flavors.[17]

26.     The percentage requirements would distinguish the flavoring component in the Products from those which contain the standardized, full strength ingredients.

B.    Vanilla WONF with Added Vanillin Would be Misleading

27.     If the "WONF" component of the Vanilla WONF contained vanillin from a non-vanilla natural source, it would be considered a vanilla-vanillin combination ingredient: Vanilla-vanillin extract, Vanilla-vanillin flavoring and Vanilla-vanillin powder.[18]

28.     The labeling and disclosure for such products would be controlled not by the general flavoring regulations but by the vanilla standards, where there is a conflict between them.

29.      The combination of vanilla and vanillin requires the name of the ingredient on the ingredient list be "followed immediately by the statement 'contains vanillin, an artificial flavor (or flavoring),'" even if the vanillin is made from natural materials and through a natural process [19]

30.     If a product made with a vanilla-vanillin combination ingredient represented that its characterizing flavor was vanilla, its front label would be required to declare the presence of

---

[17] 21 C.F.R. § 102.5(b).
[18] 21 C.F.R. § 169.180, § 169.181, § 169.182.
[19] See 21 C.F.R. § 169.180(b), § 169.181(b), § 169.182(b).

vanillin and/or artificial flavor(s).

31.   These requirements prevent consumers from being misled by products which "boost," "fortify" or "spike" a miniscule amount of real vanilla with the addition of vanillin.

32.   Without proportionally conspicuous disclosure of a product's vanilla and vanillin components, consumers would pay more money for products that may taste like vanilla even though the taste is not derived from vanilla beans.

III. Conclusion

33.   The proportion of the characterizing component, vanilla, has a material bearing on price or consumer acceptance of the Products because it is more expensive and desired by consumers.

34.   The composition of the natural flavors used in the Products is known only to defendant at this time such that an accurate and non-misleading flavor designation cannot be determined beyond the present conclusion that the unqualified representation as vanilla is misleading and deceptive.

35.   Had Plaintiff and Class members known the truth about the Products, they would not have bought the Products or would have paid less.

36.   The Products contain other representations which are misleading and deceptive.

37.   As a result of the false and misleading labeling, the Products cost no less than $5.99 per 64 FL OZ (1.5 L), excluding tax – premium prices compared to other similar products represented in a non-misleading way.

Jurisdiction and Venue

38.   Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

39.     Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

40.     This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

41.     Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

42.     A substantial part of events and omissions giving rise to the claims occurred in this District.

<u>Parties</u>

43.     Plaintiff is a citizen of Bronx County, New York

44.     Defendant is a Illinois limited liability company with a principal place of business in Batavia, California (Kane County) and upon information and belief, no member of defendant is a citizen of New York.

45.     During the class period, Plaintiff purchased one or more of the Products identified herein for personal use, consumption or application based on the above representations, for no less than the price indicated, *supra*, excluding tax, within their districts and/or states.

46.     Plaintiff would consider purchasing the Products again if there were assurances that the Products' representations were no longer misleading.

<u>Class Allegations</u>

47.     The classes will consist of all consumers in all 50 states with sub-classes for the individual states and nationwide classes.

48.     The complaint contains Plaintiff(s) from: New York, who will represent his state sub-class of persons who purchased any Products containing the actionable representations during

the statutes of limitation.

49.    Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if Plaintiff and class members are entitled to damages.

50.    Plaintiff's claims and the basis for relief are typical to other members because all were subjected to the same representations.

51.    Plaintiff is an adequate representative because his interests do not conflict with other members.

52.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

53.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

54.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

55.    Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL") §§ 349 & 350</u>
<u>and Consumer Protection Statutes of Other States and Territories</u>

56.    Plaintiff asserts causes of action under the consumer protection statutes of New York and may be subsequently joined by plaintiffs from other states under the consumer protection acts below.

a.    Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1, *et. seq.*;
b.    Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et. seq.*;
c.    Arizona Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521 *et. seq.*;
d.    Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et. seq.*;
e.    California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* and Unfair Competition Law, Cal. Bus. Prof. Code §§ 17200- 17210 *et. seq.*;
f.    Colorado Consumer Protection Act, Colo Rev. Stat § 6-1-101, *et. seq.*;

g.  Connecticut Unfair Trade Practices Act, Conn. Gen Stat § 42-110a, *et. seq.*;
h.  Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et. seq.*;
i.  District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et. seq.*;
j.  Florida Deceptive and Unfair Trade Practices, Act *Florida Statutes* § 501.201, *et. seq.*;
k.  Georgia Fair Business Practices Act, §10-1-390 *et. seq.*;
l.  Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statutes § 480 1, *et. seq.* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statute § 481A-1, *et. seq.*;
m.  Idaho Consumer Protection Act, Idaho Code § 48-601, *et. seq.*;
n.  Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et. seq.*;
o.  Indiana Deceptive Consumer Sales Act, Ind. Code §§ 24-5-0.5-1 *et. seq.*;
p.  Iowa Consumer Fraud and Private Right of Action for Consumer Frauds Act, Iowa Code Ann. § 714.16 *et seq.*;
q.  Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et. seq.*;
r.  Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et. seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020, *et. seq.*;
s.  Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, *et. seq.*;
t.  Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et. seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et. seq.*;
u.  Maryland Consumer Protection Act, Md. Code, Com. Law § 13-101 *et seq.*;
v.  Massachusetts Unfair and Deceptive Practices Act, Mass. Gen Laws Ch. 93A;
w.  Michigan Consumer Protection Act, §§ 445.901, *et. seq.*;
x.  Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et. seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et. seq.*;
y.  Mississippi Consumer Protection Act, Miss. Code An. §§ 75-24-1, *et. seq.*;
z.  Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et. seq.*;
aa.  Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code § 30-14-101, *et. seq.*;
bb.  Nebraska Consumer Protection Act, neb. Rev. Stat. § 59 1601 *et. seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et. seq.*;
cc.  Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et. seq.*;
dd.  New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et. seq.*;
ee.  New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, *et. seq.*;
ff.  New Mexico Unfair Practices Act, N.M. Sta. Ann. §§ 57 12 1, *et. seq.*;
gg.  New York General Business Law ("GBL") §§ 349 & 350;
hh.  North Carolina General Statutes Chapter 75: Monopolies, Trusts and Consumer Protection, N.C. Gen. Stat. §§ 75-1.1 through 75-35;
ii.  North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et. seq.*;
jj.  Ohio Rev. Code Ann. §§ 1345.02 and 1345.03; Ohio Admin. Code §§ 109;
kk.  Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et. seq.*;
ll.  Oregon Unfair Trade Practices Act, Ore. Rev. Stat. § 646.608(e) & (g);
mm.  Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. §§ 201-1 *et. seq.*;
nn.  Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1 *et. seq.*;
oo.  South Carolina Unfair Trade Practices Act, S.C. Code Law § 39-5-10, *et. seq.*;

pp. South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et. seq.*;

qq. Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et. seq.*;

rr. Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. §§ 17.41 *et. seq.*;

ss. Utah Consumer Sales Practices Act, Utah Code Ann. §§ 13-11-1 *et. seq.*;

tt. Vermont Consumer Fraud Act, Vt. Stat. Ann. Tit. 9, § 2451, *et. seq.*;

uu. Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-196 *et. seq.*;

vv. Washington Consumer Fraud Act, Wash. Rev. Code § 19.86/0101, *et. seq.*;

ww. West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et. seq.*;

xx. Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et. seq.*; and

yy. Wyoming Consumer Protection Act, Wyo. Stat. Ann.§§ 40-12-101 *et. seq.*;

57.    Defendant's acts, practices, advertising, labeling, packaging, representations and omissions are not unique to the parties and have a broader impact on the public.

58.    Plaintiff and class members desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product type.

59.    After mailing appropriate notice and demand, any subsequent plaintiff in a State where notice is required prior to seeking damages under that State's Consumer Protection Statutes, will have mailed and/or have amended this complaint to request damages.

60.    Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because (1) it gives the impression to consumers the Products are only flavored by the characterizing ingredient and contains more of the characterizing ingredient than they actually do and (2) the ingredient list fails to dispel ambiguity and reinforces the front-label impression as to a greater amount of the characterizing ingredients.

61.    Plaintiff and class members relied on the representations and omissions, paying more than they would have, causing damages.

<u>Negligent Misrepresentation</u>

62.    Plaintiff incorporates by reference all preceding paragraphs.

63.    Defendant misrepresented the substantive, quality, compositional, organoleptic

and/or nutritional attributes of the Products through representing the characterizing ingredient was present in greater amount than it was and affirmatively representing the Products was flavored only by vanilla.

64.    Defendant had a duty to disclose and/or provide non-deceptive labeling of the Products and knew or should have known same were false or misleading.

65.    This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product or service type.

66.    The representations took advantage of consumers' (1) cognitive shortcuts made at the point-of-sale and (2) trust placed in defendant, a well-known and respected brand in this sector.

67.    Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

68.    Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

### Breaches of Express Warranty Implied Warranty of Merchantability and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

69.    Plaintiff incorporates by reference all preceding paragraphs.

70.    Defendant manufactures and sells products which contain the identified characterizing ingredients and/or flavors which are desired by consumers.

71.    The Products warranted to Plaintiff and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not.

72.    Defendant's front labels informed and warranted to Plaintiff the Products contained

only the characterizing ingredients to impart flavor, and that they were present in amounts sufficient to independently characterize the food and that the flavor imparted to the Products was a result of the food ingredients and not "natural flavors" or "other natural flavors."

73.    Defendant had a duty to disclose and/or provide a non-deceptive description of the Products flavoring on the front labels and knew or should have known same were false or misleading.

74.    This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

75.    Plaintiff provided or will provide notice to defendant and/or its agents, representatives, retailers and their employees.

76.    The Products did not conform to their affirmations of fact and promises due to defendant's actions and were not merchantable.

77.    Plaintiff and class members relied on defendant's claims, paying more than they would have.

<u>Fraud</u>

78.    Plaintiff incorporates by references all preceding paragraphs.

79.    Defendant's purpose was to sell products which purported to contain valuable and desired characterizing ingredient(s) or flavor(s), and represent the Products were exclusively or predominantly flavored from that ingredient and contained sufficient independent amounts of same.

80.    The Products were not flavored exclusively from the characterizing ingredient but from flavor compounds blended together and labeled as "natural flavor" and "artificial flavor."

81.    Defendant's fraudulent intent is evinced by its failure to accurately indicate the

15

Products contained flavor from non-vanilla sources on the front label, because it knows consumers prefer foods that are flavored from food ingredients instead of added flavor ingredients and contain enough of the characterizing food ingredients to flavor the Products.

82.     Defendant's intent was to secure economic advantage in the marketplace against competitors by appealing to consumers who value products with sufficient amounts of the characterizing ingredients for the above-described reasons.

83.     Plaintiff and class members observed and relied on defendant's claims, causing them to pay more than they would have, entitling them to damages.

<u>Unjust Enrichment</u>

84.     Plaintiff incorporates by references all preceding paragraphs.

85.     Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

 **WHEREFORE,** Plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3.  Injunctive relief to remove and/or refrain from the challenged representations, restitution and disgorgement for members of the State Subclasses pursuant to the consumer protection laws of their States;

4.  Awarding monetary damages and interest, including treble and punitive damages, pursuant

16

to the common law and consumer protection law claims, and other statutory claims;

5.  Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6.  Other and further relief as the Court deems just and proper.

Dated:   September 26, 2019

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

*-and-*

Reese LLP
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, NY 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
mreese@reesellp.com

1:19-cv-08975
United States District Court
Southern District of New York

Eric Parham, individually and on behalf of all others similarly situated

Plaintiff

- against -

Aldi Inc.

Defendant

## Class Action Complaint

```
Sheehan & Associates, P.C.
 505 Northern Blvd., #311
  Great Neck, NY 11021
  Tel: (516) 303-0552
  Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: September 26, 2019

/s/ Spencer Sheehan
Spencer Sheehan