UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ERIC PARHAM,

                              Plaintiff,

                  v.

ALDI, INC.,

                              Defendant.

**ORDER**

19 Civ. 8975 (PGG)

---

PAUL G. GARDEPHE, U.S.D.J.:

          Plaintiff Eric Parham asserts false advertising claims under New York General

Business Law ("GBL") §§ 349 & 350 against Defendant Aldi, Inc. pertaining to an unsweetened

vanilla almond milk product.  (Am. Cmplt. (Dkt. No. 28) ¶¶ 1-4, 124-31)  On October 9, 2020,

Defendant moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

(See Def. Mot. (Dkt. No. 45); Def. Br. (Dkt. No. 46))  On January 22, 2021, this Court referred

Defendant's motion to Magistrate Judge Stewart D. Aaron for a Report and Recommendation

("R&R").  (Dkt. No. 65)

          On February 15, 2021, Judge Aaron issued an R&R recommending that

Defendant's motion to dismiss be granted without leave to amend.  (R&R (Dkt. No. 69))

Plaintiff has filed an objection to the R&R, seeking leave to file a second amended complaint.

(Pltf. Obj. (Dkt. No. 77))  For the reasons stated below, the R&R will be adopted in its entirety,

and Plaintiff's request for leave to file a second amended complaint will be denied.[1]

---

[1]  All references to page numbers in this Order are as reflected in this District's Electronic Case
Files ("ECF") system.

## BACKGROUND

I. **FACTS**[2]

Defendant "manufactures, distributes, markets, labels and sells organic unsweetened almond[]milk purporting to be flavored only with vanilla under the Friendly Farms brand ('Product')." (Am. Cmplt. (Dkt. No. 28) ¶ 1) Plaintiff is a Bronx resident who purchased the Product at various Aldi stores, including an Aldi store in the Bronx. (Id. ¶¶ 109, 113) Plaintiff's most recent purchase occurred in September 2019. (Id. ¶ 113) Plaintiff purchased "the Product because he liked the product type for its intended use and expected its vanilla flavor to not be enhanced by artificial flavors. . . ." (Id. ¶ 114)

Defendant sells its almond milk in 64-ounce cartons for $2.99. (Id. ¶¶ 2, 96) The Product is sold in retail stores and online. (Id. ¶ 2) The front label of the Product contains the brand name "Friendly Farms" at the top, along a banner that says "Organic." (Id. ¶ 3) Under the banner is the word "Almond" in larger font, below which the words "unsweetened" and "vanilla" appear. (See id. (including a picture of the carton))

Plaintiff contends that the label's

representations are misleading because although the characterizing flavor is represented as vanilla, its flavor is (1) not derived exclusively from vanilla beans, (2) has less vanilla than the label represents, (3) contains non-vanilla artificial flavors and (4) not disclosed to consumers on the front label or ingredients list as required by law and consumers' expectations.

(Id. ¶ 4)

The ingredient list on the Product carton does not mention vanilla flavoring, but refers instead to "Natural Flavor." (Id. ¶ 48; see id. ¶ 52 ("'Natural flavor' is the term used for a

---

[2] The facts discussed below are drawn from the Amended Complaint and are presumed true for purposes of resolving Defendant's motion to dismiss. See Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007).

flavor that may contain some vanilla and non-vanilla natural flavors." (citing 21 C.F.R. §

101.22(h)(1))

Based on a gas chromatography-mass spectrometry analysis of the Product, the

Complaint alleges that it contains a "comparatively high level of vanillin" and "a trace or de

minimis" amount of vanilla.  (Id. ¶¶ 56, 60, 67)  Vanillin simulates the taste of vanilla but is

obtained from tree bark.  (See id. ¶ 13)

Plaintiff alleges that had he known that the source of the vanilla flavor in the

Product was not exclusively from vanilla beans, he and other members of the class he seeks to

represent would not have purchased the Product or would have paid less for it.  (Id. ¶ 95)

## II.   **PROCEDURAL HISTORY**

The Complaint was filed on September 26, 2019 (Cmplt. (Dkt. No. 1)), and the

Amended Complaint was filed on June 8, 2020.  (Am. Cmplt. (Dkt. No. 28))  Plaintiff seeks to

represent a class "consist[ing] of all purchasers of the Product who reside[d] in New York during

the applicable statutes of limitations."  (Id. ¶ 116)  The Amended Complaint alleges claims under

GBL §§ 349 and 350, as well as claims for negligent misrepresentation, breach of warranty,

violations of the Magnuson Moss Warranty Act, fraud, and unjust enrichment.  (Id. ¶¶ 124-57)

On July 2, 2020, Plaintiff voluntarily dismissed his negligent misrepresentation

claim.  (Order (Dkt. No. 33))  On July 13, 2020, this Court dismissed on consent Plaintiff's

breach of warranty, fraud, and unjust enrichment claims, as well as Plaintiff's claims under the

Magnuson Moss Warranty Act.  (Mem. Endorsement (Dkt. No. 37))

On October 9, 2020, Defendant moved to dismiss, and Plaintiff filed his

opposition that same day.  (See Def. Mot. (Dkt. No. 45); Def. Br. (Dkt. No. 46); Goldstein Decl.

(Dkt. No. 47); Pltf. Br. (Dkt. No. 50). Def. Reply Br. (Dkt. No. 49))[3] On January 22, 2021, this

Court referred this case to Judge Aaron for general pretrial supervision as well as for an R&R

concerning Defendant's motion to dismiss.  (Order (Dkt. No. 65))

On February 15, 2021, Judge Aaron issued his R&R recommending dismissal of

Plaintiff's claims under GBL §§ 349 and 350.  (R&R (Dkt. No. 69) at 8)  Judge Aaron found that

"as a matter of law . . . a reasonable consumer would not have been misled by the labeling on the

Product container."  (Id. at 6)  Judge Aaron further recommends that this Court "decline to grant

leave to amend sua sponte."  (Id. at 8 n.5)

Plaintiff filed a timely objection to the R&R.  (See Mar. 1, 2021 Memo

Endorsement (Dkt. No. 72); Pltf. Obj. (Dkt. No. 77))  Plaintiff contends that the R&R "does not

specify whether the [Amended Complaint] should be dismissed with or without prejudice," and

he "objects to the Report only to the extent that the Report recommends dismissal with

prejudice." (Pltf. Obj. (Dkt. No. 77) at 5)  Plaintiff also seeks leave to file a second amended

complaint, which Plaintiff argues pleads "viable claims . . . under [GBL] §§ 349 and 350."  (Id.)

Defendant filed an opposition to Plaintiff's objection on April 12, 2021 (Def. Opp. (Dkt. No.

79)), and Plaintiff filed a reply on April 19, 2021.  (Ptf. Reply Obj. (Dkt. No. 80))[4]

---

[3]  In his opposition brief, Plaintiff "withdraws his claim for injunctive relief under [New York GBL] sections 349 and 350," leaving only Plaintiff's claims for damages under GBL §§ 349 and 350.  (Pltf. Br. (Dkt. No. 50) at 6)

[4]  The parties have also submitted numerous letters providing supplemental authorities.  (Feb. 24, 2021 Def. Ltr. (Dkt. No. 70); Apr. 28, 2021 Def. Ltr. (Dkt. No. 81); Apr. 29, 2021 Pltf. Response (Dkt. No. 82); June 15, 2021 Def. Ltr. (Dkt. No. 86); July 2, 2021 Def. Ltr. (Dkt. No. 87); July 9, 2021 Def. Ltr. (Dkt. No. 88); Aug. 19, 2021 Def. Ltr. (Dkt. No. 89))  Additionally, on May 28, 2021, Defendant filed a letter for a pre-motion conference in anticipation of filing a motion for summary judgment.  (May 28, 2021 Def. Ltr. (Dkt. No. 83); see also June 3, 2021 Pltf. Response Ltr. (Dkt. No. 84))  The parties also filed a letter regarding a discovery disputed on June 11, 2021.  (June 11, 2021 Joint Ltr. (Dkt. No. 85))

## DISCUSSION

## I.  LEGAL STANDARDS

### A.  Review of Magistrate Judge's Report and Recommendation

A district court's review of a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  Where a timely objection has been made to a magistrate judge's recommendation, the district court judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  Id.

However, "[o]bjections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original papers will not suffice to invoke de novo review."  Phillips v. Reed Grp., Ltd., 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013) (citation, quotation marks, and alteration marks omitted).  "[T]o the extent . . . that the [objecting] party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the [R&R] strictly for clear error." DiPilato v. 7-Eleven, Inc., 662 F. Supp. 2d 333, 339 (S.D.N.Y. 2009) (citation and quotation marks omitted).  For portions of the R&R to which no objection is made, a court's review is limited to a consideration of whether there is any "clear error on the face of the record" that precludes acceptance of the recommendations.  Wingate v. Bloomberg, No. 11-CV-188 (JPO), 2011 WL 5106009, at *1 (S.D.N.Y. Oct. 27, 2011) (citation and quotation marks omitted).

### B.  Rule 12(b)(6) Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the

complaint," Kassner, 496 F.3d at 237, and must "draw all reasonable inferences in favor of the

plaintiff." Id.

        A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of

'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and

does not provide factual allegations sufficient "to give the defendant fair notice of what the claim

is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.,

507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555-56).

## II.    MOTION TO DISMISS AMENDED COMPLAINT'S GBL CLAIMS[5]

        "To successfully assert a claim under either [GBL §§ 349 or 350], a plaintiff must

allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially

misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or

practice." Beck v. Manhattan Coll., 20 Civ. 3229 (XLS), 2021 WL 1840864, at *5 (S.D.N.Y.

May 7, 2021) (citations and quotations marks omitted).  "'An act is deceptive within the meaning

of the New York statute only if it is likely to mislead a reasonable consumer.'"  Id. (quoting

Marcus v. AT&T Corp., 138 F.3d 46, 64 (2d Cir. 1998)).  Additionally, "[u]nder either

provision, it is well settled that a court may determine as a matter of law that an allegedly

---

[5] As discussed above, "Plaintiff objects to the [R&R] only to the extent that the [R&R]
recommends dismissal with prejudice."  (Pltf. Obj. (Dkt. No. 77) at 5; see also id. at 20
("Plaintiff . . . requests that the Court either clarify that Defendant's motion to dismiss is granted
without prejudice or reject the [R&R] to the extent that it can be read to bar Plaintiff from filing
an amended complaint."))  This is not an objection, so much as a "request[] . . . to file [a] Second
Amended Complaint."  (Id. at 5)  Accordingly, this Court reviews only for clear error Judge
Aaron's recommendation that Defendant's motion to dismiss the Amended Complaint be
granted.  Wingate, 2011 WL 5106009, at *1.  Plaintiff's request to file a second amended
complaint is discussed separately below.

deceptive advertisement would not have misled a reasonable consumer." Chufen Chen v. Dunkin' Brands, Inc., 954 F.3d 492, 500 (2d Cir. 2020) (citation, quotation marks, and alteration marks omitted).

   In his R&R, Judge Aaron finds that Defendant's labeling is not misleading, because "[a] reasonable consumer would understand that the word 'vanilla' on the front of the carton describes how the Product tastes, not what it contains, especially in circumstances where the ingredients listed on the Product container do not mention vanilla at all." (R&R (Dkt. No. 69) at 6) As Judge Aaron notes (see id. at 6-7), several courts in this District have reached the same conclusion on nearly identical facts. See, e.g., Twohig v. Shop-Rite Supermarkets, Inc., 519 F. Supp. 3d 154, 158-61 (S.D.N.Y. 2021) (finding – in a case concerning a vanilla soymilk product and causes of action under GBL §§ 349 and 350 – that "[a] reasonable consumer would understand that 'vanilla' is merely a flavor designator, not an ingredient claim. Five other courts in this district have recently addressed nearly identical arguments regarding other vanilla-flavored products. All five courts rejected claims that the labeling of vanilla-flavored products was misleading because the vanilla flavor did not come predominantly or exclusively from natural vanilla." (collecting cases)).[6]

---

[6] Since the R&R was issued, other courts in this District have reached the same result on very similar facts. See, e.g., Dashnau v. Unilever Mfg. (US), Inc., 19-CV-10102 (KMK), 2021 WL 1163716, at *4 (S.D.N.Y. Mar. 26, 2021) ("Plaintiffs have not plausibly alleged that a reasonable consumer who reads the words 'vanilla bean ice cream' on the Product's front label would conclude that this labeling implies that the vanilla flavor is derived exclusively from 'real vanilla,' or from vanilla beans." (emphasis in original)); Budhani v. Monster Energy Co., 20-cv-1409 (LJL), 2021 WL 1104988, at *1, 3, 8 (S.D.N.Y. Mar. 22, 2021) (finding – in a case regarding an espresso drink that purported to be flavored with vanilla – that, with respect to claims brought under GBL §§ 349 and 350, "a reasonable consumer could not draw the conclusion from the Product labelling that the vanilla bean (or vanilla bean extract) was the predominant or exclusive source of the vanilla flavor in the Product."); see id. at *4 ("a number of cases have held that the bare use of the word 'vanilla' on a consumer good without any accompanying language or context was insufficient to convey to a reasonable consumer that the

The Court finds no clear error in Judge Aaron's recommendation that Plaintiff's §§ 349 and 350 claims be dismissed. Accordingly, those claims will be dismissed.

## III.   LEAVE TO AMEND

Noting that Plaintiff had not sought leave to amend, Judge Aaron recommends that this Court "decline to grant leave to amend sua sponte."  (R&R (Dkt. No. 69) at 8 n.5)

Plaintiff asserts that the R&R "does not specify whether the [Amended Complaint] should be dismissed with or without prejudice," and states that he "objects to the [R&R] only to the extent that the [R&R] recommends dismissal with prejudice."  (Pltf. Obj. (Dkt. No. 77) at 5)  Plaintiff requests leave to file a Second Amended Complaint ("SAC"); the proposed SAC is attached as an exhibit to his objection.  (Pltf. Obj. (Dkt. No. 77) at 5; Pltf. Obj, Ex. 1 (Dkt. No. 77-1))

Given that Judge Aaron recommends that leave to amend be denied, this Court interprets the R&R as recommending a dismissal with prejudice.  Plaintiff having objected to this recommendation, this Court will consider the issue de novo.

### A.   Applicable Law

"Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend 'shall be freely given when justice so requires,' it is within the sound discretion of the district court to grant or deny leave to amend. . . . A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) (citing Foman v. Davis,

---

ingredient vanilla bean was contained in the product as opposed to a flavor that could be derived from a number of sources" (collecting and discussing cases)); see id. at *5 ("The through line of these cases is that the word "vanilla," by itself, indicates a flavor, and the labels in question made no representation as to any particular ingredient(s) that were contained in the product or were the source of that flavor in the product.").

371 U.S. 178, 182 (1962)).  An amendment "is futile if the proposed claim could not withstand a

motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)."  Lucente v. Int'l Bus. Machs. Corp., 310

F.3d 243, 258 (2d Cir. 2002).

**B.**     **Futility**

As in the Amended Complaint, the core allegation in the proposed SAC is that,

> [b]ased on the display of 'Vanilla' on the front label and the absence of any qualifying
> terms, consumers believe that the Product's vanilla flavor comes exclusively from
> ingredients derived from the vanilla plant, such as vanilla beans or vanilla extract. . . .
> Unfortunately for consumers, the 'Vanilla' representation is false and misleading.
> Specifically, scientific testing in April 2020 of the Product revealed that the vanilla
> flavoring of the Product does not come exclusively from the vanilla plant. . . . Instead, the
> Product is spiked with vanilla flavor ingredients not derived from the vanilla plant,
> including vanillin and maltol.

(Proposed SAC (Dkt. No. 77-1) ¶¶ 2, 3; see also Am. Cmplt. (Dkt. No. 28) ¶ 4 ("The

representations are misleading because although the characterizing flavor is represented as

vanilla, its flavor is (1) not derived exclusively from vanilla beans, (2) has less vanilla than the

label represents, (3) contains non-vanilla artificial flavors and (4) not disclosed to consumers on

the front label or ingredient list as required by law and consumers' expectations."))  Plaintiff

contends that the proposed SAC "adds new factual allegations regarding what actual consumers,

like Plaintiff, understand when they see Defendant's 'Vanilla' representation."  (Pltf. Obj. (Dkt.

No. 77) at 5)

Plaintiffs' allegedly new allegations address (1) the results of a consumer survey

concerning Defendant's "vanilla" labelling; (2) "the labeling of the Product in the marketplace

vis-à-vis its competitors' products"; and (3) "the common meaning of 'vanilla,' as demonstrated

by various dictionary definitions. . . ."  (Id. at 19)

According to Plaintiff, these new allegations in the proposed SAC "set forth

plausible claims of consumer deception."  (Id.)

9

1.     **Consumer Survey**

In his R&R, Judge Aaron finds that "[a] reasonable consumer would understand that the word 'vanilla' on the front of the carton describes how the Product tastes, not what it contains."  (R&R (Dkt. No. 69) at 6 (citing similar cases))  In the proposed SAC, Plaintiff cites a consumer survey which he alleges shows "that like himself, the vast majority of 403 consumers surveyed understood the 'Vanilla' representation as not being solely about the flavor of the Product."  (Pltf. Obj. (Dkt. No. 77) at 9)  "In his [proposed SAC], Plaintiff alleges that he interpreted the 'Vanilla' representation on the front of the Product's label to mean that the Product's vanilla flavor is derived exclusively [from] ingredients from the vanilla plant."  (Id.) Plaintiff claims "that he was misled because the Product's vanilla flavor, in fact, is not exclusively from the vanilla plant. . . ."  (Id.)  Finally, Plaintiff argues that similar cases cited by Judge Aaron are not persuasive here, because the factual allegations at issue in those cases were not "backed by a well-worded [consumer] survey."  (Id. at 10 (emphasis omitted))

The consumer survey cited by Plaintiff is attached as Exhibit A to the proposed SAC.  (See Proposed SAC, Ex. A (Dkt. No. 77-1))  Approximately 400 survey respondents who purchase non-dairy milk alternatives were shown the front panel of the Product carton and then asked the following:

> Question 6 – Does the term "Vanilla" on the above pictured product convey to you that there are one or more ingredients in the product that give it vanilla flavor?

(Id. at 25)

According to Plaintiff, 84.4% – or 340 survey participants – responded "Yes" to this question.  (Id. at 25-26)  The 340 participants who answered yes to Question 6 were then asked the following:

> Question 7 – What does the term "Vanilla" on the above pictured product convey

to you about the origin of the vanilla flavor?"

(Id. at 26)

The survey provides respondents with five possible responses to Question 7:

(1) That it comes exclusively from ingredients derived from the vanilla plant, such as vanilla beans or vanilla extract;

(2) That it comes exclusively from artificial ingredients;

(3) That it comes exclusively from natural ingredients that are not from a vanilla plant, such as pine bark, clove oil, or rice bran;

(4) That it comes from a combination of ingredients; and

(5) None of these.

(Id. at 27)

According to Plaintiff, 53.8% or 183 individuals chose response (1): that the "origin of the vanilla flavor" "comes exclusively from ingredients derived from the vanilla plant, such as vanilla beans or vanilla extract." 7.6% or 26 individuals chose response (2): that the "origin of the vanilla flavor" "comes exclusively from artificial ingredients." 7.4% or 25 individuals chose response (3): that the "origin of the vanilla flavor" "comes exclusively from natural ingredients that are not from a vanilla plant, such as pine bark, clove oil, or rice bran." 17.1% or 58 individuals selected response (4): that the "origin of the vanilla flavor" "comes from a combination of ingredients." 14.1% or 48 individuals selected response (5): "None of these." (Id. at 27)

The Twohig court considered a very similar consumer survey – offered by the same plaintiff's counsel – in connection with GBL and related claims directed at the label for an "organic vanilla soymilk [product sold] under the Wholesome Pantry[] brand." Twohig, 519 F. Supp. 3d at 158; id. at 159. As here, the front label of the vanilla soymilk product prominently

11

displayed the word "Vanilla."  Id.  The consumer deception alleged in Twohig is identical to the

consumer deception alleged here:

> Plaintiffs contend that the front label deceived them into believing that the vanilla
> flavoring in the Product came only from vanilla beans and was not enhanced by
> non-vanilla flavors or artificial flavors.  ([Am. Cmplt.] ¶¶ 96, 99-101.)  But, they
> claim, vanillin – which is the main molecule in vanilla but is derived from wood
> pulp or sources other than the vanilla bean, (id. ¶¶ 13, 18, 54) – and other
> compounds contribute to the vanilla flavor of the Product.  (Id. ¶¶ 22, 23, 37.)
> They contend that the ingredient list, which includes "Organic Natural Flavors"
> and "Organic Vanilla Extract," among other ingredients, (id. ¶ 37), "fails to
> clarify any front label ambiguity" because organic vanilla extract contributes less
> to the Product's vanilla taste "than the front label and the ingredient list would
> have consumers believe," (id. ¶ 70).

Twohig, 519 F. Supp. 3d at 158-59 (emphasis in original).

As here, Plaintiff's counsel submitted a consumer survey in support of plaintiff's

false advertising claims:

> Plaintiffs rely on a consumer survey they commissioned to support their
> contentions. ([Am. Cmplt.] ¶¶ 34-35.)  According to Plaintiffs, the survey found
> that over forty-three percent of consumers expected the origin of the Product's
> vanilla taste to be "vanilla beans from the vanilla plant" and that almost fifty-five
> percent of consumers would be less likely to purchase the Product if the taste
> were due to imitation vanilla flavoring. (Doc. 15-2 at 7-8; see [Am. Cmplt.] ¶¶
> 35-36.)

Id. at 159 (footnote citation omitted).

The relevant questions in the Twohig consumer survey are similar to the relevant

questions posed in the instant consumer survey.  (Compare Proposed SAC, Ex. A (Dkt. No. 77-

1) at 25-27, with Twohig, 519 F. Supp. 3d at 162 (citing Doc. 15-2 at 7))  The core question –

"What does the label pictured above convey about the origin of the vanilla taste," Twohig, 519 F.

Supp. 3d at 163 (citation and quotation marks omitted), is substantively identical to the core

question in the instant consumer survey:  "What does the term "Vanilla" on the above pictured

product convey to you about the origin of the vanilla flavor?"  (Proposed SAC, Ex. A (Dkt. No.

77-1) at 26-27)  The consumer survey in <u>Twohig</u> also offered survey participants similar choices in responding to that core question.  (See <u>Twohig</u>, 519 F. Supp. 3d at 163 (citing Doc. 15-2) at 7; see also Twohig Consumer Survey (Dkt. No. 15-2 in 20-cv-763) at 7))[7]

The <u>Twohig</u> court concludes that the "survey commissioned by Plaintiffs' counsel does not salvage their claim." <u>Twohig</u>, 519 F. Supp. 3d at 163.  The <u>Twohig</u> court's analysis applies with equal force here:

> Even construing Plaintiffs' survey in light most favorable to Plaintiffs, the survey does not plausibly support Plaintiffs' claim.  Plaintiffs assert that the survey demonstrates that "over 43% (a plurality) believed the origin of the vanilla taste comes from the vanilla plant," (Doc. 18 at 14-15; <u>see</u> [Am. Cmplt.] ¶ 35), but the survey does not demonstrate that over 43% of the respondents believed the flavor in Defendant's product came <u>predominantly or exclusively</u> from vanilla beans – which is what Plaintiffs allege.  As explained in <u>Pichardo[ v. Only What You Need, Inc.]</u>,
>
>> [i]n the survey, the respondent was shown a picture of the bottle in which the    product is sold and asked, 'What does the label . . . convey about the origin of the vanilla taste?'  The respondent had five choices, two of which were:  'That it comes from vanilla beans from the vanilla plant' and 'That it comes from both the vanilla plant and non-vanilla sources.'  Based on the latter potential response, Plaintiffs implicitly assert that the respondents who selected 'It comes from vanilla beans from the vanilla plant' actually meant to convey that they believe the vanilla flavor comes 100% from the vanilla plant.  That is not, however, the most plausible

---

[7]  The five choices survey respondents were provided in response to the core <u>Twohig</u> question – "What does the label pictured above convey about the original of the vanilla taste?" – are as follows:

(1) That it comes from vanilla beans from the vanilla plant;

(2) That i[t] comes from sources not from the vanilla plant;

(3) That it comes from artificial sources;

(4) That it comes from both the vanilla plant and non-vanilla sources;

(5) None of these.

(Twohig Consumer Survey (Dkt. No. 15-2 in 20-cv-763) at 7)

> reading of the survey response.  Plaintiffs constructed the survey. If they
> wanted to ascertain whether respondents thought the flavor came 100%
> from the vanilla plant, that would have been an easy enough response to
> draft.

2020 WL 6323775, at *4 n.7 (internal citations omitted).  The same is true of the survey here.

> Further, in asking, "What does the label pictured above convey about the origin of
> the vanilla taste?," (Doc. 15-2 at 7), the survey presumes that the label
> conveys something about that origin, and it did not give participants the option of stating
> that they believed that the label conveyed nothing about the origin of the vanilla
> taste, (id.).  While "[t]he role of the court at this stage of the proceedings is not in
> any way to evaluate the truth as to what really happened, but merely to determine
> whether the Plaintiff's factual allegations are sufficient to allow the case to
> proceed," Doe v. Columbia University, 831 F.3d 46, 59 (2d Cir. 2016), the survey
> here – designed at the behest of counsel who apparently has brought nearly 100
> similar lawsuits challenging the labeling of vanilla flavored products and
> presumably has given significant thought to the questions – is sufficiently flawed
> that it does not contribute enough to render the claims plausible.  See Procter &
> Gamble Co. v. Ultreo, Inc., 574 F. Supp. 2d 339, 352 (S.D.N.Y. 2008) ("A survey
> is not credible if it relies on leading questions which are inherently suggestive and
> invite guessing by those who did not get any clear message at all.").

Id. at 163-64 (footnote citation omitted) (emphasis in original).

Here, as in Twohig, the consumer survey does not salvage Plaintiff's claims.  See id. at 163 (citing Becerra v. Dr Pepper/Seven Up, Inc., 945 F.3d 1225, 1231 (9th Cir. 2019) and Yu v. Dr. Pepper Snapple Grp., No. 18-CV-6664, 2020 WL 59100071, at *5 (N.D. Cal. Oct. 6, 2020)); see Becerra, 945 F.3d at 1231 ("[T]he survey does not shift the prevailing reasonable understanding of what reasonable consumers understand the word 'diet' to mean or make plausible the allegation that reasonable consumers are misled by the term 'diet.'"); Yu, 2020 WL 5910071, at *5 ("adding surveys cannot alone salvage implausible claims" of consumer deception); see also Nacarino v. Chobani, LLC, No. 20-cv-07437-EMC, 2021 WL 3487117, at *1, 2, 5, 7-8 (N.D. Cal. Aug. 9, 2021) (Plaintiff's counsel brought action claiming that yogurt labelling is misleading because the vanilla flavoring does not come exclusively from the vanilla

plant.  Plaintiff offered a consumer survey in which participants were asked, "'Does the packaging of the above pictured product convey to you that there are one or more ingredients in the product that give it vanilla flavor?'"  Those who answered yes were then asked, "'What does the packaging of the above pictured product convey to you about the origin of the vanilla flavor?'"  District court concluded that the consumer survey could not "save [plaintiff's] otherwise implausible claims. . . . [A]lthough [plaintiff's] survey supports her deceptive labelling claims, it cannot rescue her claims from the zone of implausibility where implausibility is otherwise so clear."  "This Court therefore joins the many other courts that have considered this issue and concluded that the term 'vanilla' on vanilla-flavored products merely indicates flavor and not an ingredient source.") (footnote citation omitted))).

### 2.      Market Practices

Plaintiff also asserts that his "understanding of Defendant's 'Vanilla' representation is reasonable in light of marketplace practice."  (Pltf. Obj. (Dkt. No. 77) at 12)  Plaintiff contends that Defendant's label violates federal regulations codified at 21 C.F.R. § 101.22(i)(1).  (Id. (citing Proposed SAC (Dkt. No. 77-1) ¶¶ 41-42))  According to Plaintiff, these regulations "effectively establish custom and practice in the industry," and "Defendant's improper mislabeling creates confusion because other products competing in the marketplace do comply with FDA labeling requirements."  (Id. (citing Proposed SAC (Dkt. No. 77-1) ¶¶ 16-17) (emphasis omitted); see id. at 13-14 (providing two examples of competing products))  According to Plaintiff, "consumers are confronted with various iterations of 'vanilla' on the labels on competing products in the marketplace, yet Defendant's Product with its unqualified 'Vanilla' representation does not meet consumer expectations regarding the source of the vanilla flavor, which expectations are reasonable because they align with federal disclosure

requirements."  (Proposed SAC (Dkt. No. 77-1) ¶ 46)

This argument has been rejected by other courts, as the <u>Twohig</u> court notes:

> "Plaintiffs point to a range of federal labeling regulations as evidence of what consumers should expect different types of labels to imply about the contents of their products.  But even if Plaintiffs are correct about what the federal regulations require – a point Defendants dispute – the complaint does not allege that reasonable consumers are aware of these complex regulations, much less that they incorporate the regulations into their day-to-day marketplace expectations.  There is no extrinsic evidence that the perceptions of ordinary consumers align with these various labeling standards."

<u>Twohig</u>, 519 F. Supp. 3d at 164 (quoting <u>Wynn v. Topco Associates, LLC</u>, No. 19-CV-11104, 2021 WL 168541, at *3 (S.D.N.Y. Jan. 19, 2021)); <u>see also</u> <u>Clark v. Westbrae Nat., Inc.</u>, No. 20-cv-3221-JSC, 2020 WL 7043879, at *1, 4 (N.D. Cal. Dec. 1, 2020) (Plaintiff's counsel brought a lawsuit alleging that "vanilla" representation on label of vanilla soymilk product is deceptive and misleading.  "Plaintiff allege[d] that FDA regulations regarding vanilla flavoring effectively establish custom and practice in the industry," such that consumers are primed "to infer from the Products' labeling that the Products gets its vanilla flavor from the vanilla bean."  Court ruled that this allegation is conclusory and devoid of "any facts that plausibly support the inference Plaintiff wants the Court to draw." (citation and quotation marks omitted)).

In sum, Plaintiff's argument in the proposed SAC about the federal regulations is not premised on new allegations (<u>see</u> Am. Cmplt. (Dkt. No. 28) ¶¶ 15-32, 44-47, 86-96), and provides no basis for granting leave to amend.

### 3.  Dictionary Definitions of "Vanilla"

Plaintiff cites various dictionary definitions of "vanilla" in an effort to show that "the common understanding of the word 'vanilla,' when used as an adjective to describe a food, is that the food is flavored with the vanilla bean or vanilla extract."  (Pltf. Obj. (Dkt. No. 77) at 15; <u>see id.</u> at 14-16)  These dictionary definitions do not assist Plaintiff in demonstrating that

"consumers believe that the Product's vanilla flavor comes exclusively from ingredients derived from the vanilla plant," however.  (Proposed SAC (Dkt. No. 77-1) ¶ 2)

*       *       *       *

The Court concludes that leave to amend is properly denied on futility grounds, because the allegedly new allegations in the proposed SAC would not permit Plaintiff's claims to survive a motion to dismiss.  Given that Plaintiff has had ample notice for some time of the deficiencies in his pleadings, and has not succeeded in curing these deficiencies, there is no reason to believe that further amendment would be productive.  See, e.g., Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n, 898 F.3d 243, 257-58 (2d Cir. 2018); In re Eaton Vance Mut. Funds Fee Litig., 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005).

**CONCLUSION**

For the reasons stated above, the R&R is adopted in its entirety, and Plaintiffs are denied leave to amend.  The Clerk of Court is directed to terminate the motion (Dkt. No. 45) and to close this case.

Dated:  New York, New York
         September 21, 2021

SO ORDERED.

Paul G. Gardephe
United States District Judge

17